SEITZ, Justice,
for the Majority:
I. INTRODUCTION
At about two o’clock in the morning police officer Thomas Gaul followed a car for three or four miles as it drifted back and forth in its lane. As the.car entered a ramp to join S.R. 1, Officer Gaul saw the car swerve sharply to .avoid hitting a concrete island. He turned on the emergency lights and signaled for the car to stop. After the car pulled over, Officer Gaul approached the car’s driver, Tracey West, and smelled alcohol. -West staggered out of the car and failed field sobriety tests. Gaul arrested West and charged her with an illegal lane change and driving under the influence.
Before trial, West moved to suppress the evidence that she was intoxicated. She claimed that Officer Gaul lacked the reasonable suspicion required by the Fourth Amendment to make an investigative stop of her car. Thus, any evidence of her intoxication gathered after the stop should be suppressed. After hearing testimony from the officer and reviewing the video from the police car camera, the Court of Common Pleas trial judge dismissed the lane change charge, but denied *714 the motion to suppress. The court ruled that the community caretaker doctrine permitted the stop so toe officer could check on the welfare of toe driver. The State then introduced at trial the evidence of her intoxicated state, and a jury convicted West of drunk driving.
West appealed her conviction to the Superior Court, which affirmed the trial court’s ruling on the community caretaker doctrine, and also found that Officer Gaul had reasonable suspicion to stop West for driving while intoxicated. West then appealed to our Court. She claims the community caretaker doctrine did not apply, and Officer Gaul lacked reasonable suspicion as required by the Fourth Amendment for an investigatory stop of her car.
After a careful review of the record on appeal, we affirm the judgment of the Superior Court. It is unnecessary to decide whether the community caretaker doctrine should be extended to the facts of this case. Instead, we agree with the Superior Court that Officer Gaul had reasonable and articulable suspicion to make an investigatory stop of West’s car. Her erratic driving culminating in almost crashing into a concrete island and swerving sharply before entering the highway provided reasonable suspicion for Officer Gaul to stop her car to -investigate whether she was driving while impaired.
II. STATEMENT OF FACTS AND PROCEDURAL HISTORY
In the early morning hours of June 22, 2014, Officer-Gaul was on routine patrol traveling on Route 273 westbound toward S.R. 1 in New Castle County, Delaware. He noticed a vehicle in front of him, which “was kind , of driving a little bit erratically.”[1] When asked what he meant by “erratically,” he , testified that it was “just kinda drifting back and forth in the lane,” and that this occurred several times over a distance of three to four miles.[2] According to Officer Gaul, at one point the tires hit the shoulder and then came back into the lane. When the vehicle reached the ramp leading onto Route 1 northbound, it turned to get on the ramp and then narrowly avoided colliding with a concrete island. According to the officer, the driver of the vehicle had to make a “sharp turn of the wheel to maintain the lane.”[3] At that point, the officer turned on his emergency lights and pulled the vehicle over.
When the officer initially observed the vehicle drifting back and forth in its lane, his subjective thought was that the operator may have been “tired or whatever, so that’s what drew [his] attention to it.”[4] On cross-examination, the officer agreed that initially he did not have sufficient cause to stop the appellant, but as his observations increased, “there was reasonable suspicion.”[5] The Court of Common Pleas judge asked Officer Gaul why he stopped the car. He said “basically safety of the operator,” and that it was “more of a welfare check at that point, check on her.”[6] He further stated that when he pulled her over, it was not his intention to write her a ticket.
When the officer made direct contact with West after stopping her car, he noticed a “very strong odor of alcohol.”[7] *715 After further investigation, the officer arrested West for making an illegal lane change and for driving under the influence. The Court of Common Pleas dismissed the charge of making an illegal lane'change, finding that no lane change occurred. But the court denied her motion to suppress evidence of intoxication because the stop-was justified ■ under the community caretaker doctrine. The jury then convicted West of driving under the influence.
West appealed' her conviction and the denial of her motion to suppress evidence to the Superior Court. The Superior Court affirmed on the grounds that the stop was justified under the community caretaker doctrine and also on the alternative ground that West’s erratic driving gave rise to a reasonable and articulable suspicion that she was impaired and therefore driving under the influence of alcohol.[8] This appeal followed.
III. STANDARD OF REVIEW
We review the grant or denial of a motion to suppress for abuse of discretion.[9] We review the trial judge’s factual findings to determine whether there was sufficient evidence to support the 'findings and whether those findings were clearly erroneous.[10] To the extent that we examine the trial judge’s legal conclusions, we review them de novo for errors in formulating or applying legal precepts.[11] ‘Where, as .here, we are reviewing the denial of motion to.. suppress evidence based on an.allegedly illegal stop and seizure, we conduct a de novo review to determine whether, the totality of the circumstances, in light of the trial judge’s factual findings, support a reasonable and articu-lable suspicion for the stop.”[12]
IV. ANALYSIS
The Fourth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment, guarantees “the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures....”[13] The “essential purpose” of Fourth Amendment proscriptions “is to impose a standard of Reasonableness’ upon the exercise of discretion by government officials, including *716 law enforcement agents, in order ‘to safeguard the privacy and security of individuals against arbitrary invasions....'"[14]
When law enforcement directs a driver to stop her car, the State has “seized” the car and its occupants, and the protections of the Fourth Amendment apply. But it is only those searches and seizures that are “unreasonable” that run afoul of the Fourth Amendment. In the traffic stop context, under established law since Terry v. Ohio, a seizure is reasonable when a law enforcement officer conducts a brief investigatory traffic stop based on reasonable and articulable suspicion of criminal activity.[15] Reasonable and articulable suspicion of criminal activity includes not just traffic offenses, but criminal activity such as drunk driving.[16]
As a court reviews the reasonableness of the officer’s suspicion of criminal activity, “it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search ‘warrant a [person] of reasonable caution in the belief that the action taken was appropriate?”[17] The subjective good faith of the arresting officer is not controlling because “[i]f subjective good faith- alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be ‘secure, in their persons, houses, papers and effects,’ only in the discretion of the police.”[18] In Delaware, the court can also “combin[e] objective facts with such an officer’s subjective interpretation of those facts.”[19] When considering the objective facts, the limited consideration of an officer’s subjective thoughts allows the court to accord weight to an officer’s training and experience in detecting criminal activity.[20] In other *717 words, the objective facts are viewed through the lens of a reasonable, trained police officer.
Whether reasonable and articulable suspicion of criminal activity exists depends on the totality of the circumstances and “the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act.”[21] The Supreme Court of the United States recently observed that we should use a “commonsense approach” when evaluating the Fourth Amendment’s reasonable suspicion requirement.[22] The reviewing court should “appropriately recognize certain driving behaviors as sound indicia of drunk driving.”[23]
Here, the objective facts establish reasonable and articulable suspicion that West might have been driving while impaired. We have the advantage of a video from Officer Gaul’s patrol car recording some of the events leading to West’s stop. The video shows West drifting back and forth in her lane. Officer Gaul confirmed that he followed West for three or four miles while she drove “kind of erratically.” Although weaving, within a lane by itself may be insufficient to establish reasonable suspicion of impaired driving, as the video shows, West then nearly crashed into a concrete island and swerved sharply while entering the ramp to a major highway. Looking at the totality of the circumstances — the erratic driving for three or four miles followed by a near crash into a concrete island and sharp turn correction — leads us to conclude that Officer Gaul had reasonable and articulable suspicion to stop West’s car and investigate whether she, was .driving while impaired.
We acknowledge -the ambiguity in the evidentiary record about Officer Gaul’s subjective beliefs. At one point Officer Gaul testified to his belief that reasonable suspicion existed, while at another point he stated his subjective view that he did not intend to write West a traffic ticket when pulling her over. But Officer Gaul’s subjective belief about whether reasonable suspicion existed is not controlling. As noted previously, it is the objective facts that control the outcome, not the officer’s subjective beliefs about reasonable suspicion.[24] And while West’s conduct might be *718 explained by another cause such as driver distraction or tiredness, reasonable suspicion “need not rule out' the possibility of innocent conduct.”[25]
We agree with other courts that “if failure to follow a perfect vector down the highway or keeping one’s eyes on the road were sufficient reasons to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion' of their privacy.”[26] Not all driver conduct is indicative' of intoxication,[27] But what happened here is much more than weaving within the same lane.[28] Taking a commonsense view of the facts, and with the benefit- of the video evidence, the weaving, coupled with the sharp swerve to avoid hitting a concrete island is easily recognized as driving behavior indicative of drunk driving.
V. CONCLUSION
As we emphasized in Bloomingdale v. State, the clearance to conduct an investigative stop “does not mean that the officer can go further-and require a sobriety test in the absence of additional evidence that provides a reasonable basis for that action. It simply means that the officer ought to be able to make a brief stop to inquire *719 about the driver’s fitness to operate a vehicle, given the public interest in ensuring that unsafe drivers be taken off the road promptly.”[29]
Officer Gaul’s care to avoid concluding that the'dangerous driving he'saw on the road was for certain caused by the driver’s impairment enhances,'rather than detracts from, the reasonableness of his actions. The officer acted on circumstances that give rise to a reasonable suspicion that someone was driving under the influence, and took reasonable steps to protect the public without getting ahead of himself. He made the stop to protect the public and to inquire, and only after further objective circumstances were observed that suggested that the cause of the danger was drunk driving, did he proceed further to investigate whether that was in fact the case. The Superior Court correctly held that reasonable suspicion existed to stop West for possible driving under the influence. The judgment of the Superior Court is affirmed.

. App. to Opening Br. at 15.

. Id. at 16.

. Id. at 17.

. Id. at 16.

. Id. at 31.

. Id. at 34.

. West v. State, 2015 WL 5121059, at *2 (Del.Super.Aug. 20, 2015) (quotations omitted).

. Id. at *4 ("[A]n officer’s observation of a vehicle weaving from side to side, albeit within a lane, and making sharp corrective turns to maintain the lane, for a distance of three to four miles at 2:00 a.m, could give rise to reasonable suspicion that the driver is impaired, and would justify initiating a traffic stop on the vehicle.”).

. Lopez-Vazquez v. State, 956 A.2d 1280, 1284 (Del.2008).

. Id. at 1285.

. Id. at 1284-85.

. Id. at 1285. In the Court of Common Pleas, the State raised the argument that Officer Gaul had a reasonable and articulable suspicion to make the investigatory, stop to determine whether West was driving ’while impaired. App. to Opening Br. at 40-41. Although the Court of Common Pleas did not decide the motion to suppress on this basis, the Superior Court and this Court can affirm on an alternative argument raised in the court below. See RBC Capital Markets, LLC v. Jervis, 129 A.3d 816, 849 (Del.2015). We also note that like the trial court we have the benefit of a video of much of the encounter, and thus the trial judge was not called upon to make credibility determinations.

. U.S. Const. amend. IV. West also brings her claims under Article I, § 6 of the Delaware Constitution,. analogous to the Fourth Amendment to the United States Constitution. While the Delaware Constitution’s search and seizure provision in some instances provides broader protections than the Fourth Amendment, see Jones v. State, 745 A.2d 856, 866 (Del.1999), the broader protections have no application here.

. Delaware v. Prouse, 440 U.S. 648, 653-54, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (quoting Marshall v. Barlow’s, Inc., 436 U.S. 307, 312, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978)).

. Terry v. Ohio, 392 U.S. 1, 20-21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); see also 11 Del C. § 1902(a) ("A peace officer may stop any person aproad, or in a public place, who the officer has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand the person’s name, address, business abroad and destination.”). The statutory authorization to stop based on reasonable 'grounds equates to reasonable and articulable suspicion under the common law. See Jones v. State, 745 A.2d 856, 861 (Del.1999); see also Coleman v. State, 562 A.2d 1171, 1174 (Del.1989); Malloy v. State, 462 A.2d 1088, 1091 (Del.1983) ("Before stopping [a suspect’s] car, the police [have] to have a particularized and objective basis for suspecting that he [is] violating the traffic laws.”).

. See Navarette v. California, — U.S. -, 134 S.Ct. 1683, 1687, 188 L.Ed.2d 680 (2014) ("The Fourth Amendment permits brief investigative stops-such as the traffic stop in this case — when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity.” (internal quotations omitted)); United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.” (citations omitted)); Malloy, 462 A.2d at 1091 (driving away from a tavern, making wide turns, and driving erratically created reasonable articulable suspicion to make investigatory stop on suspicion of DUI).

. Terry, 392 U.S. at 21-22, 88 S.Ct. 1868 (quoting Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)).

. Id. at 22, 88 S.Ct. 1868 (quoting Beck v. Ohio, 379 U.S. 89, 97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)).

. Jones, 745 A.2d at 861.

. See Lopez-Vazquez, 956 A.2d at 1287 ("[T]he court 'must consider the inferences and deductions that a trained officer could make which might well elude an untrained *717 person,’ " (quoting Riley v. State, 892 A.2d 370, 375 (Del.2006))); see also Robertson v. State, 596 A.2d 1345, 1350-51 (Del.1991) ("Although we give due deference to an officer’s experience and knowledge, the facts which form the basis of the reasonable suspicion must be capable of measurement against an objective standard.”).

. Ornelas v. United States, 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (quoting Illinois v. Gates, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

. Navarette, 134 S.Ct. at 1690.

. Id. (citing People v. Wells, 38 Cal.4th 1078, 45 Cal.Rptr.3d 8, 136 P.3d 810, 811 (2006) ("weaving all over the roadway”); State v. Prendergast, 103 Hawai’i 451, 83 P.3d 714, 715-716 (2004) (“cross[ing] over the center line" on a highway and "almost causing] several head-on collisions”); State v. Golotta, 178 N.J. 205, 837 A.2d 359, 361 (2003) (driving "all over the road” and "weaving back and forth”); State v. Walshire, 634 N.W.2d 625, 626 (Iowa 2001) ("driving in the median”)),

. In Terry, the United States Supreme Court emphasized the importance that the facts and inferences from them form an objectively reasonable basis for the official conduct'triggering Fourth Amendment scrutiny:
The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it *718 is imperative that the' facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a [person] of reasonable caution in the belief that the action taken was appropriate?
392 U.S. at 21-22, 88 S.Ct. 1868 (internal quotations omitted); see also Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ("We think these cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved.”). This Court's decisions are consistent with an objective view of the facts justifying the investigative stop, rather than the subjective beliefs of the individual officers executing the searches and seizures. See Lopez-Vazquez, 956 A.2d at 1287 (‘‘[R]easonable suspicion ... requires ‘some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.' ” (quoting Cortez, 449 U.S. at 417, 101 S.Ct. 690)); Jones, 745 A.2d at 861 ("A determination of reasonable suspicion must be evaluated in the context of the totality of - the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such [a reasonable, trained police officer’s] subjective interpretation of those facts.”); see also Quarles v. State, 696 A.2d 1334, 1337 (Del.1997) ("[T]he court must consider the totality of the circumstances, the ‘whole picture,’ as viewed through the eyes of a police officer who is experienced in discerning the ostensibly innocuous behavior that is indicative of narcotics trafficking.”).

. Moore v. State, 997 A.2d 656, 667 (Del.2010) (quoting United States v. Arvizu, 534 U.S. 266, 277, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)).

. United States v. Lyons, 7 F.3d 973, 976 (10th Cir.1993), overruled on other grounds by United States v. Botero-Ospina, 71 F.3d 783, 786-87 (10th Cir. 1995).

. See Navarette, 134 S.Ct. at 1691 (“Of course, not all traffic infractions imply intoxication. Unconfirmed reports of driving without a seatbelt or slightly over the speed limit, for example, are so tenuously connected to drunk driving that a stop on those grounds alone would be constitutionally suspect.”).

. The Court of Common Pleas dismissed the charge against West for improperly changing lanes. An observation of an actual violation of a traffic law would likely have been necessary to give Officer Gaul probable cause, and would additionally sustain the lesser standard for reasonable suspicion. Eskridge v. Voshell, 593 A.2d 589 (Del.1991) (Table) (‘‘There is reasonable suspicion, and hence probable cause, when a police officer observes a driver committing a traffic violation.”). But the fact that Officer Gaul observed no specific traffic violation does not speak to whether he had reasonable suspicion to make an investigative stop, which requires only that there be some “particularized and objective basis" for suspecting criminal activity. Navarette, 134 S.Ct. at 1687; Malloy, 462 A.2d at 1091.

. 842 A.2d 1221, 1222 (Del.2004).