IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,        :

                           :     I.D. No. 1612006969

v.                        :     Kent County

                           :

IRVIN C. ROTHENBERG,    :

                           :

     Defendant.       :

Submitted: May 16, 2017
Decided: May 22, 2017

## ORDER

Upon Defendant's Motion to Suppress.
*Denied.*

Dennis Kelleher, Esquire, Department of Justice, Dover, Delaware; attorney for the State of Delaware.

James M. Stiller, Jr., Esquire of Schwartz & Schwartz, Dover, Delaware; attorney for the Defendant.

WITHAM, R.J.

Before the Court are a Motion to Suppress filed by Defendant Irvin C. Rothenberg and a Response filed by the State. Mr. Rothenberg is charged with driving a vehicle while under the influence of alcohol and/or drugs (DUI), in violation of 21 *Del. C.* § 4177, and failure to yield to a vehicle in an intersection. Defendant seeks to suppress all evidence. The parties presented evidence on May 16, 2017.

The Court finds that the State met its burden to show that the agent had a reasonable and articulable suspicion of DUI when Mr. Rothenberg was arrested. There was probable cause to support the administration of a portable breathalyzer and later Intoxilyzer test. Mr. Rothenberg's motion to suppress is **DENIED.**

## FACTS

Mr. Rothenberg was driving his car westbound on Route 10 in Dover, Delaware on December 10, 2016, around 4:30 in the afternoon. He entered the left-turn lane to make a left turn on Pine Cabin Road.

While Mr. Rothenberg was in the left-turn lane heading westbound, Agent Bonniwell of the Delaware Division of Alcohol and Tobacco Enforcement was driving eastbound in his patrol vehicle, not equipped with a motor vehicle recording (MVR) device.[1] He had a green light and was entering the intersection with Pine

---

[1] Agent Bonniwell testified initially that he was on his way in to work at the time of the incident, but later clarified that he was on-duty from the moment he left his home in his uniform and marked patrol car. Because the Court accepts Agent Bonniwell's testimony that he was on-duty when the incident occurred, it will not reach Mr. Rothenberg's argument, raised for the first time at the hearing, that the agent lacked statutory authority to detain him for a traffic violation because the agent was off-duty at the time.

Cabin Road when Mr. Rothenberg began to execute a left turn across Agent Bonniwell's lane of traffic. Mr. Rothenberg's left turn caused Agent Bonniwell to "slam on [his] brakes and swerve to the left to avoid colliding with" Mr. Rothenberg's car. Agent Bonniwell was able to see Mr. Rothenberg driving the car as he executed his turn and continued southbound onto Pine Cabin Road. Agent Bonniwell made a U-turn and then followed Mr. Rothenberg until he was able to activate his emergency lights and stop him on Lemay Lane just south of Pine Cabin Road.

Initially, Mr. Rothenberg tried to get out of his car. Agent Bonniwell ordered him to remain in the car, and Mr. Rothenberg complied. When he came up to the car, Agent Bonniwell was able to smell a "strong odor" of alcohol. He noted that Mr. Rothenberg's eyes were constricted[2] and that he was slurring his words. Mr. Rothenberg said he was coming from Dover Downs and had one drink while there.

The agent asked Mr. Rothenberg to complete pre-exit tests. The first was the Alphabet Test, which Mr. Rothenberg completed successfully except that he continued listing a letter beyond those that the agent instructed him to recite. He then successfully completed the Counting Test. He was unable to complete the Finger-to-Thumb test despite the agent demonstrating it to him several times.

The agent then asked Mr. Rothenberg to step out of the car to complete field sobriety tests. Mr. Rothenberg immediately had difficulty stepping out of the car and steadied himself with both arms. He maintained his balance by holding onto the car. When the agent asked him to step away from the car, Mr. Rothenberg did so slowly

---

[2] The agent's police report indicated that Mr. Rothenberg's pupils were dilated, but the Court credits Agent Bonniwell's testimony at the hearing that his pupils were constricted.

and kept his left hand close to the side of the car.

The agent administered the Horizontal Gaze Nystagmus test, which Mr. Rothenberg completed with his glasses on. Mr. Rothenberg displayed lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and onset of nystagmus prior to 45 degrees in both eyes. Mr. Rothenberg did not complete the walk-and-turn or one-leg-stand test, apparently because he had a double hip replacement. Nonetheless, he began trying to walk in a straight line without being told to do so, and the agent asked him to stop and complete the walk-and-turn test. Mr. Rothenberg was unable to complete either of the tests.

The agent then had Mr. Rothenberg complete the portable breathalyzer test (PBT) at 4:50 p.m., which resulted in a PBT of .223. Mr. Rothenberg told the agent that his blood-alcohol content was "probably going to be high" before he blew into the PBT. The agent then arrested Mr. Rothenberg and transported him to Troop 3. Before transporting him, the agent conducted an inventory search of Mr. Rothenberg's car and discovered mouthwash, which Mr. Rothenberg admitted to drinking.

After arriving at Troop 3, the agent began a twenty-minute observation period at 6:15 p.m. and Mr. Rothenberg blew into the Intoxilyzer at 6:38, yielding a BAC of .207.

Mr. Rothenberg was indicted on one charge of driving a vehicle while under the influence of alcohol and/or drugs, and another charge of failure to yield. This is the Court's decision on his Motion to Suppress and the State's Response in opposition.

4

## THE PARTIES' CONTENTIONS

Mr. Rothenberg seeks the suppression of all the evidence against him or, alternatively, of the results of various pre-exit tests, field sobriety tests (FSTs), the PBT, and his Intoxilyzer test. He alleges that the agent did not have a reasonable and articulable suspicion to initiate the investigation, failed to create an MVR of the incident, used unreliable pre-exit test methods, improperly administered the tests, and lacked probable cause for his arrest, PBT, and Intoxilyzer test.

The State responds that the lack of an MVR does not entitle Mr. Rothenberg to suppression, the pre-exit tests are admissible and part of the probable cause analysis, even imperfectly administered field sobriety tests can contribute to probable cause, and there was thus sufficient probable cause for the PBT, arrest, and subsequent Intoxilyzer test.

## STANDARD OF REVIEW

When a defendant moves to suppress evidence collected in a warrantless seizure, the State bears the burden of proving by a preponderance of the evidence "that the challenged police conduct comported with the rights guaranteed [to the defendant] by the United States Constitution, the Delaware Constitution and Delaware statutory law."[3]

## DISCUSSION

Mr. Rothenberg's motion is denied. The agent had a reasonable and articulable suspicion to engage in the pre-exit tests and field sobriety tests. That reasonable and

---

[3] *State v. Kang*, 2001 WL 1729126, at *3 (Del. Super. Ct. Nov. 30, 2001).

5

articulable suspicion was based upon the observed traffic violation, the odor of alcohol, Mr. Rothenberg's slurred speech, his constricted pupils, and his admission that he had recently consumed alcohol. Even when the incorrectly conducted HGN test and problematic walk-and-turn and one-leg-stand tests are excluded, additional statements by Mr. Rothenberg and observations by the agent provided probable cause to support Mr. Rothenberg's eventual PBT, arrest, and Intoxilyzer test. Mr. Rothenberg waived his argument regarding the MVR by not raising the matter at the hearing, particularly in light of the agent's uncontroverted testimony that his vehicle was not equipped with an MVR device.

*Reasonable and Articulable Suspicion for the Agent's Investigation*

The agent had a reasonable and articulable suspicion of DUI, based upon the traffic violation, the odor of alcohol, Mr, Rothenberg's slurred speech, his constricted pupils, and his admission that he had recently consumed alcohol, to engage in further investigation.

An investigatory stop is a "seizure" for the purposes of the Fourth Amendment.[4] When such seizures are "unreasonable," they violate the Fourth Amendment.[5] A *Terry* stop "is reasonable when a law enforcement officer conducts a brief investigatory traffic stop based on reasonable and articulable suspicion of criminal activity."[6] "Reasonable and articulable suspicion is a less stringent standard than the probable cause standard and requires a quantum of proof that is less than

---

[4] *West v. State*, 143 A.3d 712, 716 (Del. 2016).

[5] *Id.*

[6] *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20–21 (1968)).

6

preponderance of the evidence."[7]

A court determining whether an officer's actions were supported by a reasonable and articulable suspicion "must examine the totality of the circumstances 'as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts.'"[8] "Courts will defer to the experience and training of police officers."[9]

An odor of alcohol and the commission of a traffic offense are enough, on their own, to constitute a reasonable and articulable suspicion that a DUI offense has been committed and to "justify a request that the driver perform some field sobriety tests."[10] Based upon the driver's performance on those tests, the officer may discover "facts that either elevate what was only a suspicion into probable cause, or dispel the suspicion and result in no DUI arrest."[11]

Before beginning the pre-exit tests, the agent observed that Mr. Rothenberg's car had a strong odor of alcohol and that Mr. Rothenberg had failed to yield to him in an intersection. That alone would create a reasonable and articulable suspicion that DUI had been committed. Mr. Rothenberg's answer to the agent's follow-up

---

[7] *Purnell v. State*, 832 A.2d 714, 719 (Del. 2003) (citing *Woody v. State*, 765 A.2d 1257, 1263 (Del. 2001)).

[8] *Id.* (quoting *Woody,* 75 A.2d at 1263).

[9] *Id.* at 719–20 (quoting *Woody*, 75 A.2d at 1262).

[10] *Lefebvre v. State*, 19 A.3d 287, 295 (Del. 2011) (citing *Esham v. Voshell,* 1987 WL 8277, at *2 (Del. Super. Ct. Mar. 2, 1987)).

[11] *Id.*

question, indicating that he had a drink while at Dover Downs, further bolstered that suspicion. Finally, Mr. Rothenberg's slurred speech and constricted pupils suggested that he may have been impaired. The agent's investigation was thus supported by a reasonable and articulable suspicion of DUI.

*Probable Cause for the PBT, Arrest, and Intoxilyzer Test*

The PBT, later arrest, and Intoxilyzer test were supported by probable cause, based in part on the same grounds that gave the agent a reasonable and articulable suspicion of DUI. In addition, Mr. Rothenberg's performance on the pre-exit tests and his behavior during the investigation solidified the necessary probable cause for a PBT, arrest, and Intoxilyzer test.

Delaware courts "determine probable cause by the totality of the circumstances, as viewed by a reasonable police officer in the light of his or her training and experience:"

> To establish probable cause, the police need only present facts suggesting, in the totality of the circumstances, that a fair probability exists that the defendant has committed a crime. "A finding of probable cause does not require the police to uncover information sufficient to prove a suspect's guilt beyond a reasonable doubt or even to prove that guilt is more likely than not."[12]

As a threshold matter, there is no authority for Mr. Rothenberg's contention that pre-exit tests may not be used to establish probable cause. To the contrary, courts have held such tests to be an appropriate part of a probable cause analysis and even

---

[12] *Miller v. State*, 4 A.3d 371, 373–74 (Del. 2010) (citations omitted).

8

permitted their use to establish guilt.[13] Accordingly, the results of those tests are relevant to a finding of probable cause and are also potentially admissible as evidence of guilt.

As to the other field sobriety tests (the HGN, the walk-and-turn, and the one-leg-stand tests), Mr. Rothenberg has raised issues with the way they were administered, suggesting that those issues make the tests unusable in determining probable cause. An incorrectly administered field sobriety test generally cannot be used to establish probable cause.[14] The State must lay a foundation for the NHTSA standards and the officer's compliance with those standards.[15]

The issues with the HGN test merit disregarding the results for the purposes of determining probable cause. The agent neglected to ask at any point if Mr.

---

[13] *E.g.*, *Guilfoil v. State*, 135 A.3d 78 (Table), 2016 WL 943760, at *5 (Del. Mar. 11, 2016) (including among "overwhelming evidence . . . in favor of conviction" the defendant's failure at the alphabet and counting tests); *Lefebvre*, 19 A.3d at 293 (citing *Bease v. State*, 884 A.2d 495, 497–98 (Del. 2005)) ("[A]s this Court held in *Bease*, evidence of a traffic violation, odor of alcohol, rapid speech, admission to drinking, bloodshot and glassy eyes and a failed alphabet test constituted probable cause to arrest the driver for a DUI offense."); *State v. Lackford*, 2014 WL 1230765, at *1, *4 (Del. Super. Jan. 29, 2014) (poor performance on pre-exit field sobriety tests, including finger dexterity test, is part of the totality of circumstances analysis for probable cause).

[14] *See Miller v. State*, 4 A.3d 371, 374 (Del. 2010) ("Because [the officer] did not testify as to the NHTSA standards *or compliance with those standards*, the trial judge erred by considering the results of these tests in his probable cause analysis." (emphasis added)); *State v. Mulholland*, No. 1108002781, 2013 WL 3131642, at *6 (Del. Ct. Com. Pl. June 14, 2013). *But see State v. Murray*, No. 1306022016, 2014 WL 4178345, at *3 n.11 (Del. Ct. Com. Pl. Aug. 22, 2014) (failure to follow NHTSA standards does not disqualify tests from consideration in probable cause determination); *State v. Lanouette*, No. 0803028532, 2012 WL 4857820, at *8 (Del. Ct. Com. Pl. Aug. 27, 2012) (same); *State v. Ministero*, No. 0306011221, 2006 WL 3844201, at *2 (Del. Ct. Com. Pl. Dec. 21, 2006) (same).

[15] *Miller*, 4 A.3d at 374.

Rothenberg had eye issues, neglected to ask him to remove his glasses, and may not have followed the NHTSA standards. Accordingly, the results of the HGN will not be considered for the purpose of determining probable cause.

Similarly, the State has not shown that Mr. Rothenberg's refusal to complete the walk-and-turn and one-leg-stand tests was due to something other than his double hip replacement. The question of why he refused to complete the tests may be relevant to the question of guilt, but the results as such do not contribute to the determination of probable cause.

The facts show that the agent observed Mr. Rothenberg for more than fifteen minutes prior to administering the PBT. There is no evidence that the PBT was not properly administered, nor is there anything to suggest that there was alcohol that remained in Mr. Rothenberg's mouth prior to the administration of the PBT. The results of the PBT will be considered in determining whether there was probable cause for arrest or the subsequent Intoxilyzer test.

The agent had ample probable cause for Mr. Rothenberg's PBT, subsequent arrest, and Intoxilyzer test. Beside the traffic violation, the odor of alcohol, Mr. Rothenberg's slurred speech, his constricted pupils, and his statement that he had recently consumed alcohol, the agent also had the benefit of Mr. Rothenberg's failed performance on the pre-exit tests, and his observation of his behavior during the investigation, including his difficulty maintaining his balance. In addition, before submitting to the PBT, Mr. Rothenberg told the agent the result would be high.

Under any precedential authority on the subject,[16] the evidence available to the agent constituted probable cause for Mr. Rothenberg's arrest.

## CONCLUSION

The investigation of Mr. Rothenberg was supported by a reasonable and articulable suspicion of DUI. His PBT, arrest, and Intoxilyzer test were supported by probable cause. His motion to suppress is thus **DENIED**.

IT IS SO ORDERED.

Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh
oc:  Prothonotary
xc:  Dennis Kelleher, Esquire
     James M. Stiller, Jr., Esquire

---

[16] *See, e.g., Bease v. State*, 884 A.2d 495, 499–500 (Del. 2005) (probable cause existed where defendant "spoke in a rapid manner . . . , smelled of alcohol, admitted that he consumed alcoholic beverages the night before, had bloodshot and glassy eyes, and had just committed a traffic violation . . ."); *see generally id.* at 498–99 (collecting cases).