# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,

v.

LYRIC A. CARTER.

)
)
)
)
)
)
)

C.A. No.: 2203010050

## MEMORANDUM OPINION

Defendant Lyric A. Carter (hereinafter, "Defendant") brings this motion to invalidate the seizure of Defendant and suppress all evidence gathered after the traffic stop on March 18, 2022. The Court conducted a hearing on Defendant's motion on May 28, 2025. For the reasons that follow, Defendant's Motion to Suppress is **DENIED.**

On the evening of March 18, 2022, Detective Guevara while driving a marked police vehicle, entered Memorial Drive eastbound. [1] Memorial Drive is a divided roadway with a concrete median separating eastbound and westbound traffic. The eastbound side of Memorial Drive has three lanes divided by solid lines (fog lines). The three lanes consist of a travel lane, a bike lane, and a parking lane. While in the

---

[1] Detective Guevara's marked police vehicle was equipped with a Network Video Recorder (the "NVR"), which recorded the minute prior to the detective's stop of Defendant. That video was played at the hearing and corroborated much of Detective Guevara's testimony given at the hearing.

1

travel lane, the detective observed a white Toyota minivan (the "Toyota") directly in front of him.

Memorial Drive is a high traffic area that consists of both residential and commercial property; the road also has high volume of pedestrians, bicyclists, and motor vehicles. On the evening of March 18th, there was no pedestrians and bicyclists. However, there was, more or less, fourteen (14) parked cars, one of which had their ignition engaged.

The Toyota was proceeding at an appropriate rate of speed. There were cars traveling on the westbound side of Memorial Drive; however, there did not appear to be any vehicles in front of the Toyota. While traveling behind the Toyota, Detective Guevara watched the vehicle drift well into the bike lane three times. The three instances of Defendant drifting into the bike lane lasted approximately: twenty-two (22) seconds, six (6) seconds, and fifteen (15) seconds, respectively. The detective had observed the vehicle for approximately a half a mile.

Based on those observations, Detective Guevara signaled for the Toyota to pull over. After initiating the traffic stop for violation of 21 Del. C. § 4122, Defendant was subsequently charged with driving under the influence of drugs, resisting arrest, and possession of marijuana.

It is undisputed that the circumstances subsequent to the initial traffic stop constituted sufficient probable cause to arrest Defendant. However, the parties differ as to whether Detective Guevara had reasonable articulable suspicion to initiate the traffic stop in the first place.

In his Motion to Suppress, Defendant argues that there was insufficient reasonable suspicion to stop his vehicle for an alleged lane violation and that the stop, detention, and seizure of evidence violated his state and federal constitutional rights against unreasonable search and seizures because he entered the bike lane in a safe manner. The State responded that Detective Guevara had reasonable suspicion to conduct a traffic stop because he was concerned about the safety risk posed by the Toyota's proximity to parked cars and the possibility of someone "jumping out" from one of them.

"The Fourth Amendment of the United States Constitution and Article I, § 6 of the Delaware Constitution protect individuals from unreasonable searches and seizures."[2] Under the Fourth Amendment, the occupants and the vehicle are seized when a police officer conducts a traffic stop of a vehicle.[3] The stop and subsequent

---

[2] *State v. Seaton*, 2018 WL 656380, at *2 (Del. Super. Ct. Jan. 30, 2018).
[3] *State v. Clay*, 2002 WL 1162300, at *2 (Del. Super. Ct. May 28, 2008).

seizure are subject to constitutional limits.[4] Therefore, the State must show that "the stop and any subsequent police investigation were reasonable in the circumstances."[5]

A stop is reasonable when it is supported by probable cause to believe that a traffic code violation has occurred or that there is reasonable articulable suspicion that criminal activity is afoot.[6] Probable cause exists "as long as the officer is making the traffic stop based on a violation of the traffic code that he has observed."[7] Reasonable suspicion "must be evaluated in the context of the totality of the circumstances viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[8]

The State argues that Detective Guevara had reasonable suspicion to stop Defendant because Defendant violated 21 Del. C. § 4122(1), which relevant part states that:

> Whenever any roadway has been divided into 2 or more clearly marked lanes for traffic, the following rules in addition to all others consistent herewith shall apply: (1) A vehicle shall be driven as nearly as

[4] *Seaton*, 2018 WL 656380, at *2.
[5] *Caldwell v. State*, 780 A.2d 1037, 1045-46 (Del. 2001).
[6] *Id.*
[7] *Seaton*, 2018 WL 656380, at *2.
[8] *Id.*

4

practicable entirely within a single land and shall not be moved from such lane until the driver has first ascertained that such movement can be made with *safety*."[9] (emphasis added)

The State contends that it was Detective Guevara's reasonable belief that Defendant had not moved into the bike lane with safety.

In his Motion, Defendant does not make an effort to justify his veering into the bike lane. At the hearing, Defendant argued that the reasoning was to avoid the headlights of the traffic heading westbound on Memorial Drive. Defendant maintains that he was safe in doing so because there were no pedestrians, bicyclists, and there was considerable distance between the Toyota and the parked vehicles. Defendant, in his Legal Memorandum, cites to numerous cases to support his contention that Detective Guevara lacked reasonable suspicion to believe Defendant violated § 4122(1).[10]

In order to justify the traffic stop, Detective Guevara needed to demonstrate through his testimony (by the articulation of factual circumstance prior to the stop)

---

[9] 21 Del. C. § 4122(1).

[10] *State v. Blank*, 2001 WL 755932 (Del. Super. Ct. June 26, 2001); *State v. Edwards*, 2002 WL 32000657 (Del. Com. Pl. May 31, 2002); *State v. Clay*, 2002 WL 1162300 (Del. Super. Ct. May 28, 002); *State v. Niffenegger*, 2003 WL 23163274 (Del. Super. Ct. Dec. 8, 2003); *State v. Adkins*, 2007 WL 1861903 (Del. Super. Ct. June 26, 2007); *State v. Seaton*, 2018 WL 656380 (Del. Super. Ct. Jan 30, 2018); *State v. Jones*, 2021 WL 579476 (Del. Com. Pl. Dec. 6, 2021).

5

that he possessed a reasonable suspicion that Defendant crossed the lane lines without first ascertaining whether it was safe to do so.[11]

A driver violates § 4122 only by deviating from a lane without first ensuring it's safe to do so.[12] The importance of this safety prerequisite was thoroughly discussed in *State v. Blank*. In *Blank*, the Delaware Superior Court determined that § 4122 aligns with the principle that "changing lanes and crossing lane markings on a highway are only prohibited when the driver has neglected to ascertain whether such movement can be made with safety; the statute does not outright prohibit crossing lane lines (even if for no apparent reason)."[13] The *Blank* Court explained that the trooper failed to establish reasonable suspicion because he could not demonstrate the defendant's line-crossing was done without first ensuring safety.[14]

The Superior Court has identified examples of dangerous lane violations, such as a defendant making sharp course corrections without awareness of surroundings and almost colliding with another object,[15] or a defendant crossing a fog line twice and weaving within their lane.[16]

---

[11] *State v. Blank*, 2001 WL 755932, at *2 (Del. Super. Ct. June 26, 2001).

[12] *State v. Jones*, 2021 WL 5779476, at *2 (Del. Com. Pl. Dec. 6, 2021).

[13] *Blank*, 2001 WL 755932, at *2.

[14] *Id.*

[15] *State v. Anderson*, 2010 WL 4056130, at *3 (Del. Super. Ct. Oct. 14, 2010); *West v. State*, 143 A.3d 712, 725 (Del. 2016) (J. Valihura, concurring).

[16] *State v. Mulholland*, 2013 WL 3131642, at *1 (Del. Com. Pl. June 14, 2013).

Here, the Court finds that Detective Guevara had reasonable suspicion to conduct a traffic stop on a § 4122 violation. Detective Guevara testified that the underlying reason for the traffic stop was because he was concerned that Defendant was not safely going into the bike lane. The detective stated that the vehicles parked on the right side of the roadway and the proximity of the Toyota to them posed a safety problem. The Court agrees and his testimony is supported by the NVR recording.

Upon the Court's review of the NVR, the video shows that there were approximately fourteen (14) parked vehicles along Memorial Drive and that Defendant was driving in the bike lane while passing roughly eight (8) of them. Defendant came considerably close to some of the parked cars he was passing, one of which appeared to be occupied, and Defendant stayed in the bike lane even after the headlights of vehicles heading eastbound had passed him, undermining any claim that the glare of the oncoming light caused his deviation from his lane of travel. Due to the proximity of Defendant's Toyota to the parked cars, Defendant did not enter the bike lane safely.

Thus, under the totality of the circumstances, Detective Guevara had reasonable suspicion to believe that Defendant crossed the fog line and entered into the bike lane in an unsafe manner and, therefore, violated § 4122(1).

7

**THEREFORE, IT IS HEREBY ORDERED**, that Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

The Honorable Carl C. Danberg
Chief Judge

8