# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE         )
                                 )
   v.                      )    I.D. # 1706008671
                                 )
CHRISTOPHER RIGGINS,     )
                                 )
    Defendant.        )

Submitted: November 17, 2017
Decided: December 7, 2017

## Upon Defendant's Motion to Suppress:
## DENIED

This 7th day of December, 2017, upon consideration of the Motion to Suppress (the "Motion") filed on behalf of Christopher Riggins, the record in this case, and the applicable legal authorities, it appears to the Court that:

## FACTUAL BACKGROUND

1.     Riggins was arrested on June 12, 2017 for Driving Under the Influence, Third Offense ("DUI") and Leaving the Scene of a Collision. In this Motion, Riggins challenges both the arresting officer's reasonable and articulable suspicion for initiating the traffic stop that led to Riggins' arrest and the officer's probable cause to make the arrest.

2.     On June 12, 2017, Corporal Charles Armstrong, a member of the Delaware State Police, was returning to Troop 2 when he received a radio call reporting the driver of a dark pickup truck was slumped over the vehicle's steering

wheel in the area of DE 896 and Porter Road. Armstrong drove around the area, but did not see any vehicle fitting that description. Just as he was about to "clear" the report, and while he was sitting at a traffic light at the intersection of 896 and Porter Road,[1] the driver of a garbage truck stopped next to Armstrong's police car. The driver reported that a blue pickup truck had just struck a vehicle at the intersection of 896 and Pulaski Highway and was attempting to leave the scene. The garbage truck driver indicated the pickup truck was in the turning lane of Southbound 896, waiting to turn left onto Porter Road, the direction in which Armstrong already was headed. The pickup truck was not visible at the time, so the garbage truck driver did not specifically point to the vehicle.

3.    Moments later, Armstrong observed a dark pickup truck making a left turn off 896 and traveling westbound on Porter Road. Armstrong quickly followed the vehicle, a dark blue Chevy Silverado, and initiated a traffic stop. Armstrong spoke briefly with the driver, Riggins. During this interaction, Armstrong detected a strong odor of alcohol on Riggins' breath and observed that his face was flushed and his eyes appeared glassy and were moving slowly. Armstrong then walked around the vehicle and observed damage on the front right side of the vehicle, including paint transfer, a broken lens, and what appeared to be a piece of a taillight stuck in the headlight. Armstrong spoke to Riggins again and inquired

---

[1] Technically, Armstrong was on Glasgow Bypass, directly across from Porter Road.

2

about the damage to the vehicle. Riggins denied any knowledge about the damage, telling Armstrong "I'm not 100% sure what you are talking about."

4. Armstrong next conferred with the driver of another vehicle, which had pulled behind Armstrong's police car shortly after he pulled Riggins over. The driver of that third vehicle reported that he witnessed the crash and had followed Riggins' vehicle after Riggins left the scene. The witness reported that the Silverado rolled into another vehicle at a stoplight at the intersection of 896 and Pulaski Highway. Before the crash, the witness saw Riggins nodding off at the wheel. After the crash, Riggins immediately drove away, and the witness followed him and called the police.

5. Armstrong then returned to Riggins' truck to speak with him. During their conversation, Riggins told Armstrong he was driving home after spending time with friends at a nearby bar and restaurant. Riggins admitted to drinking "a couple drinks" about two hours before the traffic stop. He again denied involvement in the crash and disclaimed any knowledge of damage to his vehicle. Armstrong continued to detect the odor of alcohol and observed that Riggins' eyes were glassy.

6. Armstrong asked Riggins to step out of the vehicle and perform various field sobriety tests. During all these tests, Riggins was cooperative and his speech seemed normal. The State does not rely on the field sobriety test results to

3

support its argument that Armstrong had probable cause to arrest Riggins. After administering those tests, Armstrong asked Riggins to take a portable breathalyzer test ("PBT"). Riggins refused to take the PBT, arguing he had passed the other field sobriety tests and wanted to speak with a lawyer. Armstrong then placed Riggins under arrest and transported him to Troop 2. Armstrong obtained a search warrant for a blood test and Riggins' blood then was drawn.

7. Riggins first challenges Armstrong's basis for initiating the stop, arguing Armstrong lacked a reasonable and articulable suspicion to initiate the traffic stop because he lacked "any corroboration of apparent damage to any vehicles, and hence, [had] no corroboration that Mr. Riggins was involved in a hit-and-run."[2] The State argues, however, that the totality of the circumstances, viewed through Armstrong's eyes as a trained police officer, support a finding that Armstrong had reasonable and articulable suspicion of criminal activity. The State also argues the stop independently was justified under the community caretaker doctrine based on the report Armstrong received that the driver of a dark pickup truck was asleep at the wheel, followed by a second report that a dark pickup truck in the same area was involved in a hit-and-run accident.

8. Even if Armstrong had reasonable and articulable suspicion to stop the truck, Riggins argues, Armstrong did not have probable cause to arrest Riggins

---

[2] Mot. to Suppress at 3.

and transport him to the troop for a blood test. Riggins argues the field tests Armstrong conducted are unreliable and therefore inadmissible, the mere fact that Riggins had been involved in a car accident was not sufficient to find probable cause, and Riggins' behavior during the traffic stop did not provide any additional basis for Armstrong to conclude there was a fair probability that Riggins was driving under the influence. The State agrees that the field sobriety tests should not be considered for purposes of the probable cause analysis, but contends that the circumstances, taken together, including the odor of alcohol, appearance of Riggins' eyes, damage to the vehicle, reports he had been asleep at the wheel, and refusal to submit to a PBT more than meet the probable cause standard.

**ANALYSIS**

9. The Fourth and Fourteenth Amendments to the United States Constitution guarantee "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[3] Those protections apply in the context of a traffic stop such as the one at issue here. Succinctly stated, Armstrong needed reasonable and articulable suspicion to stop Riggins' vehicle and probable cause to place him under arrest. In my view, under

---

[3] U.S. Const. amend. IV. Article I, § 6 of the Delaware Constitution contains a similar search and seizure provision that, at times, is broader than the protections afforded by the United States Constitution. For purposes of the issues raised in this Motion, the protections are identical.

the totality of the circumstances known to Armstrong, the stop and later arrest met the constitutional requirements.

### A. Armstrong had a valid basis to stop Riggins' vehicle.

10. A law enforcement officer may "seize" a vehicle and its occupants to conduct a brief, investigatory traffic stop if the officer has reasonable and articulable suspicion of criminal activity.[4] That criminal activity may include both traffic offenses and drunk driving.[5] In assessing whether an officer had reasonable and articulable suspicion, the Court considers whether the objective facts, viewed through the lens of a reasonable, trained police officer, would "warrant a person of reasonable caution in the belief that the action taken was appropriate."[6] The standard requires a "commonsense approach" that considers "the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act."[7]

11. The circumstances known to Armstrong at the time he initiated the traffic stop warranted his belief that a traffic offense, whether a hit-and-run or drunk driving, had occurred. In a short period of time, Armstrong received two reports regarding the driver of a dark pickup truck in the area. The first report, called over the radio, indicated the driver was slumped over the steering wheel.

---

[4] *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968); *Jones v. State*, 745 A.2d 856, 861 (Del 1999).
[5] *West v. State*, 143 A.3d 712, 716 (Del. 2016).
[6] *Id.* at 716-17.
[7] *Id.* at 717 (quoting *Arnelas v. United States*, 517 U.S. 690, 695 (1996); *Navarette v. California*, 134 S.Ct. 1683, 1690 (2014)).

The second report, given directly to Armstrong by the garbage truck driver, was that a dark pickup truck, waiting to turn left from 896 onto Porter Road, had just struck a vehicle and left the scene of the accident. Riggins correctly points out that the garbage truck driver did not specifically identify the offending vehicle, and no damage to the truck was visible when Armstrong initiated the stop. The garbage truck driver provided sufficient information, however, for Armstrong reliably to identify the truck when it turned shortly thereafter. The garbage truck driver's report therefore fell within the "practical considerations" upon which Armstrong was entitled to act. The two reports, taken together, amount to reasonable and articulable suspicion.

12. Even if Armstrong lacked reasonable suspicion of criminal activity, the stop also was justified under the community caretaker doctrine for much the same reasons. That doctrine is an exception to the warrant requirement and recognizes the fact that police at times undertake a non-investigative, non-criminal function of ensuring the safety and welfare of citizens.[8] The doctrine has three elements:

> First, as long as there are objective, specific and articulable facts from which an experienced officer would suspect that a citizen is in need of help or is in peril, then that officer has the right to stop and investigate. Second, if the citizen is in need of aid, then the officer may take appropriate action to render assistance or mitigate the peril. Third, once, however, the officer is assured that the citizen is not in

---

[8] *Williams v. State*, 962 A.2d 210, 218-19 (Del. 2008).

peril or is no longer in need of assistance or that the peril has been mitigated, then any actions beyond that constitute a seizure implicating . . . the protections provided by the Fourth Amendment, but more importantly, those greater guarantees afforded under [state law].[9]

13.     Here, Armstrong received a report about a dark blue pickup with its driver slumped over the wheel, followed shortly thereafter by a report that a dark blue pickup truck was involved in a nearby hit and run accident.  As set forth above, Armstrong had sufficient information to suspect Riggins' truck was the vehicle at issue, and Armstrong therefore had sufficient objective facts to believe Riggins was in need of help.  After Armstrong spoke with Riggins, it was clear he was not in peril, but by then Armstrong had additional facts, including the alcohol on Riggins' breath, his glassy eyes, and his flushed face.  Those additional facts, considered in conjunction with the reports Armstrong received before the stop, amounted to reasonable and articulable suspicion to investigate possible criminal activity.

**B. Riggins' arrest was supported by probable cause.**

14.     Riggins alternatively contends that, even if Armstrong properly initiated the traffic stop, he did not have probable cause to arrest Riggins, transport him to Troop 2, and obtain a warrant for a blood draw.  An officer must have

---

[9] *Williams*, 962 A.2d at 219 (quoting *State v. Lovegren*, 51 P.3d 471, 475-76 (Mont. 2002)).

probable cause to believe a person was driving under the influence of drugs or alcohol before requiring that person to submit to a blood test.[10]

> Probable cause to arrest for a DUI offense exists when an officer possesses "information which would warrant a reasonable man in believing that [such] a crime ha[s] been committed." To meet this standard, police must "present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability" that the defendant has committed a DUI offense. . . . What is required is that the arresting police officer possess a "quantum of trustworthy factual information" sufficient to warrant a man of reasonable caution in believing a DUI offense has been committed.[11]

15. A traffic violation or motor vehicle accident, combined with the odor of alcohol, does not itself constitute probable cause to arrest a driver for suspected DUI.[12] Here, however, Armstrong had substantially more facts, both through his personal observations and the statements of witnesses,[13] supporting his belief that Riggins was driving under the influence. Two different witnesses reported directly to Armstrong that Riggins had been involved in a hit and run accident. The second witness also reported Riggins had been falling asleep at the wheel. The reports of an accident were corroborated by the damage to Riggins' vehicle, but Riggins denied any knowledge of an accident or damage to the truck. Riggins admitted to

---

[10] *Bease v. State*, 884 A.2d 495, 498 (Del. 2005); 21 *Del. C.* §§ 2740(a).

[11] *Lefebvre v. State*, 19 A.3d 287, 292-93 (Del. 2011) (quoting *State v. Maxwell*, 624 A.2d 926, 929-31 (Del. 1993)).

[12] *Williams v. Shahan*, 1993 WL 19611, at *4 (Del. Super. Jan. 25, 1993); *Esham v. Voshell*, 1987 WL 8277, at *2 (Del. Super. Mar. 2, 1987).

[13] *See State v. Holmes*, 2015 WL 5168374, at *8 (Del. Super. Sept. 3, 2015) ("[h]earsay information may form the basis of probable cause if sufficiently corroborated by other facts within the officer's direct knowledge").

drinking a couple hours before the encounter, and Armstrong detected a strong odor of alcohol on Riggins' breath. In addition, Riggins' face was flushed, and his eyes were glassy. Riggins refused to submit to a PBT, which may be considered as evidence of consciousness of guilty.[14]

16.     Those facts, viewed in the totality of the circumstances, warranted Armstrong's belief that there was a fair probability that Riggins was driving under the influence. That conclusion is consistent with precedent in both this Court and the Delaware Supreme Court.[15] The fact that the field sobriety tests are not admissible, or that Riggins might have "passed" one or more of those tests, does not negate the other, substantial facts available to Armstrong that amounted to probable cause to arrest Riggins.[16]

---

[14] *State v. Durrant*, 188 A.2d 526 (Del. 1963). As set forth above, Armstrong had reasonable and articulable suspicion to conduct field sobriety tests.

[15] *See, e.g. Bease*, 884 A.2d 495 (holding driver's commission of a traffic violation, the odor of alcohol on his breath, and his (a) rapid speech, (b) bloodshot and glassy eyes, (c) admission to drinking the night before, and (d) inability to produce a license were sufficient facts for a finding of probable cause); *State v. Iyer*, 2011 WL 976480 (Del. Super. Feb. 23, 2011) (finding probable cause to arrest based on driver's involvement in a single-vehicle accident, the moderate odor of alcohol on his breath, watery, glassy, and bloodshot eyes, and admission to drinking several hours before the accident).

[16] *See Lefebvre*, 19 A.3d at 294-95 ("[F]ield test results that are either favorable to the driver or mixed do not [] negate the probable cause to arrest that existed before the field tests began.").

Therefore, for all the foregoing reasons, Christopher Riggins' Motion to Suppress is **DENIED. IT IS SO ORDERED**.

Abigail M. LeGrow, Judge

Original to Prothonotary
cc:    William L. Raisis, Deputy Attorney General
       Thomas A. Foley, Esquire

11