# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE, )
)
)
)
v. ) Cr. A. No. 1705013235
)
LEROY A. BERRY, )
)
Defendant. )
)

Submitted: February 22, 2018
Decided: April 20, 2018

Samuel B. Kenney, Esq.
Deputy Attorney General
Department of Justice
820 North French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

James M. Stiller, Jr., Esq.
Schwartz & Schwartz, P.A.
1140 South State Street
Dover, DE 19901
*Attorney for Defendant*

## MEMORANDUM OPINION ON
## DEFENDANT'S MOTION TO SUPPRESS

WELCH, J.

# I.  PROCEDURAL POSTURE

On June 1, 2017, Defendant Leroy A. Berry ("Defendant") was charged with Resisting Arrest, in violation of 11 *Del. C.* § 1257(b); Leaving the Scene of a Property Collision Accident, in violation of 21 *Del. C.* § 4201(a); Failure to Provide Information at Collision Scene Resulting in Property Damage, in violation of 21 *Del. C.* § 4201(b); Driving a Vehicle Under the Influence of Illicit or Recreational Drugs within Four Hours of Driving, in violation of 21 *Del. C.* § 4177(a)(6); and Inattentive Driving, in violation of 21 *Del. C.* § 4176(b).  On June 6, 2017, Defendant entered a plea of not guilty.  On November 7, 2017, Defendant filed a *Motion to Suppress* ("Motion"), moving to suppress evidence of his initial stop, subsequent arrest, and blood draw.[1]  On January 2, 2018, a motion hearing was held in the Court of Common Pleas.

Following the hearing, the Court reserved its decision and ordered supplemental briefing on issues raised in the Motion.  Specifically: (1) whether there was reasonable articulable suspicion for the police officer to detain Defendant for further investigation related to driving under the influence and/or the companion charges, (2) whether there was probable cause to arrest Defendant for driving under the influence and/or the companion charges, and (3) whether there existed sufficient probable cause within the four-corners of the search warrant affidavit for the Justice of the Peace Court magistrate to sign the search warrant to draw Defendant's blood.

On January 30, 2018, the State filed its *Response to Defendant's Motion to Suppress* ("State's Response").[2]  And, on February 22, 2018, Defendant filed his *Reply to State's Response to Defendant's Motion to Suppress* ("Defendant's Reply").[3]  This is the Court's memorandum opinion on Defendant's Motion.

---

[1] Defendant's Motion to Suppress (hereinafter "Defendant's Motion").
[2] State's Response to Defendant's Motion to Suppress (hereinafter "State's Response").
[3] Defense Reply to State's Response to Defendant's Motion to Suppress (hereinafter "Defendant's Reply").

## II. FACTUAL HISTORY

The suppression hearing consisted of testimony from the State's witness, Officer First Class Michael Hilliard ("Officer Hilliard") of the Middletown Police Department,[4] and a portion of Officer Hilliard's body camera recording ("BCR").[5] Officer Hilliard's testimony is summarized below.[6]

On May 20, 2017, Officer Hilliard testified that he received a radio transmission from the dispatch center regarding a property collision at 420 East Main Street, which is the address of the "Chicken House."[7] The Chicken House is located at the end of a row of stores in Middletown Crossing Shopping Center. Cement pillars are stationed in between the storefronts as well as at the end of each row. Shortly after 7:26 p.m., Officer Hilliard arrived at the Chicken House and spoke with Nancy Pacheco ("Ms. Pacheco"), the owner of the Chicken House. She informed him that Defendant's vehicle had collided with a cement pillar outside of the Chicken House and Defendant had subsequently exited his vehicle, walking down the street onto Dickenson Boulevard. Because Defendant was not far-off, Ms. Pacheco was able to point him out as he walked down Dickenson Boulevard. Officer Hilliard then left the scene of the accident to pursue Defendant.

Once Officer Hilliard was near Defendant, he parked his patrol vehicle at the intersection of Dickenson Boulevard and East Main Street.[8] At this point, Defendant was about to cross the street when Officer Hilliard arrived. From across the intersection, Officer Hilliard beckoned

---

[4] Officer Hilliard testified that he had been employed with the Middletown Police Department for three years and received training from the New Castle County Policy Academy related to detecting DUI. This training was based on National Highway Traffic Safety Administration ("NHTSA") standards.

[5] Officer Hilliard's body camera recording ("BCR") was played according to a stipulation by both parties. However, only video file ending in #1935 was played for the Court.

[6] Relevant portions of the BCR will be discussed *infra*.

[7] Officer Hilliard's BCR did not record this incident and/or the recording was not played at the suppression hearing.

[8] Officer Hilliard's BCR begins recording at this point in time.

3

Defendant to cross and speak with him. Defendant turned and acknowledged Officer Hilliard, but did not cross the intersection. In his interaction with Defendant, Officer Hilliard testified that Defendant appeared to be "looking past" Officer Hilliard as if "something was going on" behind him. Officer Hilliard did not believe Defendant was responsive to his questions. He found Defendant's comments to be mumbled and that Defendant would not turn and talk to Officer Hilliard when Defendant was asked direct questions. Officer Hilliard testified that he believed Defendant was "out of it" and his responses were not similar to how "a real person would respond to a person speaking with them." Officer Hilliard testified that Defendant's hands remained clenched around his water bottle when the two were conversing.

Believing something was awry, Officer Hilliard asked Defendant to place his hands behind his back.[9] Officer Hilliard testified that after he asked Defendant numerous times to place his hands behind his back, Defendant "did not respond right away," so Officer Hilliard pulled Defendant's arms behind his back for him. When Officer Hilliard first attempted to move Defendant's arms, Defendant "tensed and tried to pull away from" him. Officer Hilliard was able to handcuff Defendant and place him in Officer Hilliard's patrol vehicle.

Officer Hilliard then spoke again with Ms. Pacheco who confirmed that Officer Hilliard had picked up the man she saw seated in the driver's seat of a vehicle that had collided with the cement pillar.[10] She further stated that Defendant had stayed seated in the vehicle for approximately ten minutes before he exited the vehicle.[11] In her opinion, she believed Defendant was "high."[12]

---

[9] Officer Hilliard testified that he was detaining Defendant at this point for "an investigation related to the accident."
[10] She did not witness the accident, but was informed of the collision by an employee.
[11] She noted that customers of the Chicken House had helped him exit his vehicle.
[12] Officer Hilliard testified that during the investigation, his supervisor, Sergeant Saunders, arrived at the scene and also gave his opinion that, based on previous interactions, Defendant "did not seem like his normal self." In the BCR, the wind muffles this interaction.

4

Officer Hilliard then transported Defendant to the Middletown Police Department to conduct a further driving under the influence ("DUI") investigation. At the Middletown Police Department, Officer Hilliard read Defendant his *Miranda rights* and Defendant agreed to speak with him. Defendant again denied ingesting drugs or alcohol. At the suppression hearing, Officer Hilliard noted that Defendant seemed appropriately dressed and "orderly." Defendant did not appear discombobulated, but Officer Hilliard described his facial expression as a blank stare. Officer Hilliard again testified that Defendant did not provide coherent answers to his questions. Officer Hilliard further testified that Defendant asked repetitive questions regarding the process and Officer Hilliard ended up repeating himself multiple times. Officer Hilliard did not notice an odor of alcohol. Likewise, Defendant refused to perform field sobriety tests, including refusing to blow into the Preliminary Breath Test ("PBT"). Because of these refusals, a Drug Recognition Expert ("DRE") refused Officer Hilliard's request to travel to the Middletown Police Department and perform a DRE evaluation.

Upon learning a DRE would not be responding to his location, Officer Hilliard drafted a Blood Search Warrant ("Warrant") and Search Warrant Affidavit ("Affidavit") to draw Defendant's blood.[13] Officer Hilliard's Affidavit was a summary of his testimony at the suppression hearing. Based on the Affidavit, the Justice of the Peace Court 11 ("JP Court") approved the Warrant.[14] Officer Hilliard then contact Omega Diagnostics for a blood draw and Maria Cruz, an Omega phlebotomist, was sent to the Middletown Police Department. Ms. Cruz withdrew Defendant's blood at approximately 12:40 a.m. on May 21, 2017.

---

[13] State's Exhibit 1.
[14] *Id.*

5

## III. PARTIES' CONTENTIONS

Relying on the Fourth Amendment to the United States Constitution, Defendant requests that the Court "suppress all evidence of wrong doing; or in the alternative, suppress the results of the blood test."[15] In his Motion, Defendant argues that Officer Hilliard "did not have reasonable articulable suspicion [], much less probable cause [], to arrest Defendant for DUI and/or to then administer a blood draw."[16] Defendant asserts that a "minor property damage collision" without an odor of alcohol or drugs is insufficient to support Defendant's arrest and subsequent blood draw.[17] Defendant concurrently argues that the blood draw violates 21 *Del. C.* § 4177(a)(6) because Defendant's blood was not drawn "within [four] hours of driving."[18]

In the State's Response, the State requests that the Motion be denied. The State argues that Officer Hilliard possessed reasonable articulable suspicion to detain and investigate Defendant, Officer Hilliard possessed probable cause to arrest Defendant for driving under the influence of drugs, and the Affidavit presented to the JP Court Magistrate contained sufficient facts to support a probable cause determination under a "Four-corners" analysis.[19] Regarding reasonable articulable suspicion, the State argues that a property damage collision in which a defendant flees the scene without providing the appropriate information violates Delaware law and, therefore, provides sufficient suspicion.[20] Regarding Defendant's arrest, the State relies on the probable cause standard, arguing that Defendant was linked to the accident as the driver, engaged in incoherent speech, possessed a blank stare and pinpoint pupils, and—in the opinion of a witness—was "high."[21] In addition, the State argues that Officer Hilliard had probable cause to arrest

---

[15] Defendant's Motion at 3 (citing *West v. State*, 143 A.3d 712, 715 (Del. 2016)).
[16] *Id.* at 1.
[17] *Id.*
[18] *Id.* at 2 (quoting 21 *Del. C.* § 4177(a)(6)) (internal quotation marks omitted).
[19] State's Response at 5, 6, 7.
[20] *Id.* at 5-6.
[21] *Id.* at 6-7.

6

Defendant for resisting arrest because Defendant was "tensing his body and arms and refusing to place his hands behind his back" when Officer Hilliard handcuffed him.[22] Finally, the State argues that probable cause exists on the face of the Affidavit.[23]

In Defendant's Reply, Defendant disagrees with the State's characterization of his demeanor during the encounter with Officer Hilliard. Defendant asserts that his behavior was more appropriately interpreted as apprehension and fear.[24] Likewise, his pinpoint pupils could be readily explained by the brightness of May 20th, and his "resisting" was merely an attempt not to drop his water bottle.[25] Defendant also elaborates on his original arguments. First, Defendant seems to concede that Officer Hilliard had reasonable articulable suspicion to stop Defendant and investigate whether he was the individual who left the scene of the collision.[26] Second, Defendant argues that Officer Hilliard did not possess probable cause to arrest Defendant for resisting arrest because it is unclear whether Defendant's arms "tensed up" in order to prevent the water bottle from falling or resist the arrest.[27] Third, Defendant argues Officer Hilliard lacked reasonable articulable suspicion to investigate Defendant for a DUI as there was no alcohol or drug odor, Defendant's pupils reacted to the sunlight, and the BCR refutes Officer Hilliard's descriptions of Defendant's facial expressions and speech.[28] Fourth, the BCR does not support probable cause to arrest Defendant for DUI. Fifth, the four-corners of the Affidavit do not support a finding of probable cause when the Affidavit omits mention of Officer Hilliard's NHTSA training in

---

[22] *Id.* at 7.

[23] *Id.* at 7-9.

[24] Defendant's Reply at 1.

[25] *Id.* at 1-2.

[26] *Id.* at 2 ("[Officer] Hilliard *appears* to have had [reasonable articulable suspicion] to stop Defendant . . . ." (emphasis added)).

[27] *Id.*

[28] *Id.* at 2-3.

impairment detection and "what inferences can be drawn from pinpointed pupils . . . on a bright day."[29]

## IV.    **DISCUSSION**

On a Motion to Suppress, the State must prove by a preponderance of evidence that the underlying stop and subsequent arrest are based on sufficient evidence.[30] However, as Defendant's Motion relates to the Affidavit, Defendant bears the burden of challenging the validity of the search warrant and proving that the search or seizure was unlawful.[31]

### A.    *Reasonable Articulable Suspicion to Stop Defendant*

The Fourth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment, protects individuals against unreasonable searches and seizures.[32] The Delaware Supreme Court has stated:

> Under *Terry v. Ohio,* an officer is justified in stopping an individual when the officer possesses a reasonable, articulable suspicion that the individual was committing, had committed, or was about to commit a crime. This Court has recognized that an arresting officer is "entitled to rely on information relayed to him through official channels" and that "[t]he arresting officer himself need not be apprised of the underlying circumstances which have risen to a conclusion of probable cause."[33]

The Supreme Court has further held that a "police officer may conduct a *Terry* stop of an individual who matches the description of a suspect provided to the officer either by a reliable informant or over a police radio broadcast."[34] A court's analysis of the police officer's suspicion is based on the totality of the circumstances—"through the eyes of a reasonable, trained police

---

[29] *Id.* at 3-4.
[30] *See State v. Predeoux,* 2013 WL 5913393, at *1 (Del. Super. Nov. 4, 2013); *see also State v. Aklilu,* 2017 WL 66340, at *3 (Del. Com. Pl. Jan. 4, 2017).
[31] *See State v. Murray,* 2017 WL 5668030, at *5 (Del. Com. Pl. Nov. 20, 2017) (Welch, J.) (quoting *State v. Dopirak,* 2017 WL 3129234, at *1 (Del. Super. July 24, 2017)).
[32] U.S. CONST. amends. IV & XIV, § 1.
[33] *Thomas v. State,* 8 A.3d 1195, 1198 (Del. 2010) (footnotes omitted).
[34] *Id.*

officer in the same circumstances combining objective facts with a reasonable officer's subjective interpretation of those facts."[35]

The Court agrees with the State that Officer Hilliard possessed reasonable articulable suspicion to stop Defendant and investigate whether he had recently been involved in the Middletown Crossing Shopping Center collision. Officer Hilliard was dispatched to the Chicken House for a one-vehicle collision; Ms. Pacheco provided a coherent story of the incident that involved a fleeing driver; and she was not only able to describe the individual, but point him out on Dickenson Boulevard. Since information from reliable informants[36] and concerned neighbors[37] can support reasonable articulable suspicion, the Court similarly finds that a business owner who provides a firsthand description of the accident and driver has satisfied the reasonable articulable suspicion standard.

Therefore, Officer Hilliard possessed reasonable articulable suspicion to stop and investigate Defendant.[38]

---

[35] *Harris v. State*, 871 A.2d 1128, 2005 WL 850421, at *2 (Del. Apr. 11, 2005) (TABLE).

[36] *See Purnell v. State*, 832 A.2d 714, 720 (Del. 2003).

[37] *Harris*, 871 A.2d 1128, 2005 WL 850421, at *2 ("a concerned citizen called police around 11:30 p.m. to report suspicious activity as it was occurring in her driveway").

[38] Note that Defendant is not arguing that Officer Hilliard lacked reasonable articulable suspicion to investigate the one-vehicle accident. This argument would clearly fail. *See State v. Shutak*, 2017 WL 4339690, at *4 & ns. 18-19 (Del. Com. Pl. Sept. 29, 2017).

### B. *Reasonable Articulable Suspicion to Proceed to a DUI Investigation*

Pursuant to the Fourth Amendment of the United States Constitution,[39] the Court finds that Officer Hilliard possessed reasonable articulable suspicion to proceed from an accident investigation to a DUI Investigation.[40] As this Court has stated,

> The Delaware Supreme Court has defined reasonable articulable suspicion as an "officer's ability to 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion.' " "Reasonable suspicion must be evaluated in the context of the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[41]

The standard is not exacting,[42] and a police officer's belief that a defendant is confused can be a vital factor.[43] In the present case, Officer Hilliard and Defendant engaged in the following exchange when Officer Hilliard approached Defendant on Dickenson Boulevard.

HILLIARD: "Hey sir, what's going on? Come here."

BERRY: *turns*

HILLIARD: "Were you just driving a car?"

BERRY: "Huh?"

HILLIARD: "Were you just driving a car?"

---

[39] Delaware has codified its constitutional standards for lawful detentions and stops in 11 *Del. C.* § 1902. *See State v. Powell*, 2002 WL 1308368, at *5 (Del. Super. June 4, 2002). However, Defendant has not alleged a violation of a Delaware Constitutional provision. *See Fowler v. State*, 148 A.3d 1170, 2016 WL 5853434, at *1 (Del. Sept. 29, 2016) (TABLE); *accord Jenkins v. State*, 970 A.2d 154, 158 (Del. 2009) ("To present properly an alleged violation of the Delaware Constitution, a defendant must discuss and analyze one or more of the following non-exclusive criteria . . . ."). Defendant's briefing not only omits reference to the Delaware Constitution, but expressly relies on the United States Constitution.

[40] Officer Hilliard testified that—in his mind—the transition from an accident investigation to a DUI investigation occurred when Officer Hilliard returned to the Chicken House and questioned Ms. Pacheco.

[41] *State v. Lane*, 2014 WL 904785, at *3 (Del. Com. Pl. Mar. 10, 2014) (footnotes omitted) (quoting *Jones v. State,* 745 A.2d 856, 861 (Del. 1999)).

[42] *See, e.g., State v. Rothenberg,* 2017 WL 2257381, at *3 (Del. Super. May 22, 2017) (odor of alcohol and traffic offense were sufficient).

[43] *See State v. McDowell*, 2016 WL 6462143, at *3 & n.10 (Del. Super. Oct. 31, 2016) (denoting in a footnote the extent of defendant's confusion during the investigation).

BERRY: "What?"

HILLIARD: "Were you just driving a car?"

HILLIARD: "Were you just driving a car?"

BERRY: "Where?"

HILLIARD: "What's that?"[44]

BERRY: "Huh?"

HILLIARD: "Were you just driving a car?"

BERRY: *silent*

HILLIARD: "What's going on?"

BERRY: "What's up?"

HILLIARD: "Were you just driving a car?"

BERRY: *affirmative head nod*

HILLIARD: "What kind of car were you driving?"

BERRY: *raising eyebrows and hands*

HILLIARD: "What kind of car were you driving?"

BERRY: "What's up?"

HILLIARD: "Alright, put your hands behind your back for me." (attempting to handcuff Defendant)

HILLIARD: "Put your hands behind your back."

HILLIARD: "Put your hands behind your back."

HILLIARD: "Put your hands behind your back."

HILLIARD: "Put your hands behind your back."

---

[44] Based on the BCR, it appears that Officer Hilliard does not hear Defendant's response of "Where" and, thus, Officer Hilliard repeats the question. The BCR evidences a windy day and a softer tone to Defendant's voice.

11

HILLIARD: "Put your hands behind your back."

BERRY: "What's going on?"

While Defendant presented no difficulty walking or speaking, and no odor was present, the Court finds that the above exchange supports a finding of reasonable articulable suspicion. The facts in this case not only involve a one-vehicle accident, but a defendant who has wandered away from the scene of the accident and—in Officer Hilliard's view—seemed particularly unresponsive to questioning. Officer Hilliard's subjective interpretation cannot be overlooked in this analysis. When those subjective opinions are combined with the objective facts, the Court finds that reasonable articulable suspicion existed to proceed to a DUI investigation.

### C. Probable Cause to Arrest Defendant for Resisting Arrest

Officer Hilliard possessed probable cause to arrest Defendant for resisting arrest. The Delaware Supreme Court has noted:

> We have previously held that "[t]he probable cause standard is incapable of precise definition ... because it deals with probabilities and depends on the totality of the circumstances." The substance of all probable cause definitions, however, is a "reasonable ground for belief of guilt," which must be particular to the person seized. Probable cause exists where the facts and circumstances within the arresting officer's knowledge, of which he has trustworthy information, are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed. The standard for probable cause requires less evidence than would justify a conviction and does not require the officers to have facts within their knowledge that would establish that the arrestee's guilt is more likely than not. Only a fair probability, not a *prima facie* showing, of criminal activity is the standard for probable cause.

> "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." Hypothetically innocent explanations for facts learned during an investigation do not preclude a finding of probable cause.[45]

---

[45] *Stafford v. State*, 59 A.3d 1223, 1229 (Del. 2012) (footnotes omitted).

Pursuant to Title 11, § 1257(b) states, "[a] person is guilty of resisting arrest when the person *intentionally prevents or attempts to prevent* a peace officer from effecting an arrest or detention of the person or another person or intentionally flees from a peace officer who is effecting an arrest or detention of the person."[46] Regarding intent, 11 *Del. C.* § 231(b) states,

> A person acts intentionally with respect to an element of an offense when:
>
> > (1) If the element involves the nature of the person's conduct or a result thereof, *it is the person's conscious object to engage in conduct of that nature or to cause that result*; and
> >
> > (2) If the element involves the attendant circumstances, the person is aware of the existence of such circumstances or believes or hopes that they exist.[47]

The Delaware Supreme Court has held that "conscious object" is not "simply requiring the person be aware of the circumstances and resulting consequences."[48] Instead, a synonym for "conscious object" would be "purpose."[49]

In the present case, Defendant intentionally prevented Officer Hilliard from effectuating an arrest when he refused to place his hands behind his back despite repeated requests from Officer Hilliard, and when he pulled away from Officer Hilliard. This Court has found probable cause for resisting arrest when a defendant "pull[s] away" from the arresting police officer.[50] Given that Officer Hilliard provided ample time for Defendant to comply,[51] the Court sees no reason why Defendant's conduct does not provide probable cause to arrest him pursuant to § 1257(b).

---

[46] 11 *Del. C.* § 1257(b) (emphasis added).

[47] 11 *Del. C.* § 231(b) (emphasis added); *accord State v. Watkins*, 2016 WL 8999312, at *5 & n.9 (Del. Com. Pl. Feb. 2, 2016) (Welch, J.).

[48] *Phillips v. State*, 154 A.3d 1146, 1161 (Del. 2017).

[49] WEBSTER'S II DICTIONARY 577 (3d ed. 2005) (defining "purpose" as "[a]n intended or desired result : goal").

[50] *See State v. Issa*, 2013 WL 8845040, at *2, 6 (Del. Com. Pl. Feb. 1, 2013); *accord State v. Dorazio*, 2014 WL 7007891, at *1, 5 (Del. Super. Nov. 24, 2014) (Manning, C.) ("It is also worth noting that at the point in time Defendant pulled away from the officer, the officer then had probable cause to arrest Defendant for Resisting Arrest under Delaware law.").

[51] *See State v. Coreano*, 2009 WL 2859163, at *2, 7 (Del. Com. Pl. Apr. 21, 2009) (finding that five seconds was an insufficient timeframe for defendant to comply with the police officer's request to exit the defendant's vehicle). Based on the BCR, Defendant was given approximately twenty seconds to comply before he was handcuffed.

Defendant has argued that he cannot be found guilty of resisting arrest because he was not intentionally preventing his arrest, but was intentionally attempting to hold onto his water bottle.[52] Defendant's argument is misguided. Section 1257(b)'s language, "intentionally prevents or attempts to prevent a peace officer from effecting an arrest," is not focused on *why* a defendant prevents the arrest from occurring, but whether his words or actions evidence a purpose of preventing the arrest.[53] Likewise, Defendant provides the Court with no case law for its assertion. Therefore, the Court is unpersuaded by Defendant's focus on the motives behind his intentional prevention.

### D. Probable Cause to Arrest Defendant for DUI

Officer Hilliard did not possess probable cause to arrest Defendant for a DUI. The tenets of the probable cause standard, as applied to DUI offenses, have been articulated previously:

> [P]robable cause is an "elusive concept which ... lies somewhere between suspicion and sufficient evidence to convict." Probable cause exists when "an officer possesses information which would warrant a reasonable man in believing that such a crime has been committed." In the context of DUI offenses, the arresting officer must possess facts which, when viewed in the totality of the circumstances, suggest a fair probability that the defendant was driving under the influence. In essence, the State has to establish that the arresting officer "possess[ed] a quantum of trustworthy factual information sufficient to warrant a man of reasonable caution in believing a DUI offense ha[d] been committed." Generally, probable cause to arrest a driver for a DUI offense is measured by the arresting officer's observations of the defendant, including the defendant's performance on field sobriety tests."[54]

Pursuant to 21 *Del. C.* § 4177(i), a police officer is authorized to arrest a person suspected of fleeing the scene of an accident involving said person if the police officer possesses probable cause to believe § 4177 has been violated.[55]

---

[52] Defendant's Reply at 2.
[53] 11 *Del. C.* § 1257(b).
[54] *See Shutak*, 2017 WL 4339690, at *5 (quoting *State v. Diver*, 2017 WL 2558265, at *4 (Del. Com. Pl. June 13, 2017)).
[55] 21 *Del. C.* § 4177(i).

14

In this case, after Officer Hilliard placed Defendant in handcuffs,[56] Officer Hilliard proceeds to walk Defendant over to his patrol vehicle and the following exchange occurs.

HILLIARD: "What's going on?"

HILLIARD: "What'd you take today?"

BERRY: "Huh?"

HILLIARD: "What'd you take?"

BERRY: "I didn't take nothing."

HILLIARD: "You're not high on anything; you're looking past me; you're out of it."

---

[56] In the State's Response, it asserts the following: "Officer Hilliard had probable cause to *arrest* Berry for the crime of resisting arrest *after* Berry resisted Officer Hilliard's attempts to detain him by tensing his body and arms and refusing to place his hands behind his back. In that respect, Officer Hilliard would not need to establish probable cause for driving under the influence *at the scene*; such probable cause to charge Berry with DUI could be established after subsequent investigation at the police station." State's Response at 7 (emphasis added). First, the State fails to provide any support for the claim that a formal arrest of one charge tolls the tilling for probable cause in relation to a second charge. Second, the State implies that Defendant was formally arrested at the point Defendant was handcuffed; yet, the Court disagrees. In *State v. Zappa*, this Court stated,

> A seizure may constitute either an investigatory detention, which requires a basis of reasonable articulable suspicion, or a custodial arrest, which requires a basis of probable cause. In determining whether a seizure is an investigatory detention or a custodial arrest, the Court examines "the nature and the degree of the intrusion occasioned by the particular encounter" under the totality of the circumstances. In its analysis, the Court considers the following:
>
> > (1) the amount of force used by the police; (2) the need for such force; (3) the extent to which the individual's freedom of movement was restrained; (4) the physical treatment of the individual, including whether handcuffs were used; (5) the number of agents involved; (6) the duration of the stop; and (7) whether the target of the stop was suspected of being armed.

*State v. Zappa*, 2016 WL 4537763, at *7 (Del. Com. Pl. Aug. 22, 2016) (footnotes omitted). In *Zappa*, this Court found that applying handcuffs and placing a defendant in the backseat of a police vehicle did not constitute an arrest. *Id.* at *8. The Court noted that handcuffs are not dispositive of an arrest, finding instead that the police officer would have been prevented from safely conducting her investigation if the defendant was not restrained and removed from the scene. *Id.* The Court allowed the investigatory detention to continue at the police station because of the "necessity" of the continued detention based on the "unfolding situation." *Id.* (quoting *State v. Davis*, 2012 WL 3794286, at *2 (Del. Com. Pl. July 9, 2012)) (internal quotation marks omitted).

In this case, Defendant was handcuffed and transported to the scene of the accident that he had left. In *State v. Berry*, this Court noted that the Delaware Superior Court allowed "movement from one scene to another within the scope of an investigatory detention . . . unless the '[d]uration of the seizure ... or level of intrusion elevates the deprivation ... to an arrest.'" *State v. Berry*, 2016 WL 9001122, at *3 (Del. Com. Pl. June 30, 2016) (Welch, J.) (quoting *State v. Kang*, 2001 WL 1729126, at *7 (Del. Super. Nov. 30, 2001)). Hence, the investigatory detention extended to Officer Hilliard's questioning of witnesses and Defendant at the scene of the accident. However, the detention did not extend to Officer Hilliard's questioning at the police department as, at that point, the level of intrusion had elevated.

15

Officer Hilliard then places Defendant in his patrol vehicle. Defendant exhibits no problem climbing into the vehicle—beyond the difficulty of entering and exiting a vehicle with handcuffs.

As Officer Hilliard approaches the Chicken House with Defendant in his vehicle, Officer Hilliard points to the vehicle that collided with the cement pillar and asks Defendant whether the vehicle is his vehicle. Defendant agrees that it is his vehicle and that he was driving it. After a second Middletown Police Officer arrives, Officer Hilliard leaves Defendant in his patrol vehicle to speak with the second officer. When they return to the patrol vehicle and open the vehicle door to speak with Defendant, the following interaction occurs:

HILLIARD: "Do you need an ambulance or anything?"

BERRY: "No."

HILLIARD: "You don't need an ambulance?"

BERRY: "No."

HILLIARD: "What did you take? Be honest with me."

BERRY: *silence*

HILLIARD: "What kind of drugs did you take?"

BERRY: "Nothing."

***

HILLIARD: "For your welfare, what did you take?"

BERRY: "Nothing."

Officer Hilliard proceeds to request that Defendant step out of the patrol vehicle and search his person. Defendant responded to further questioning with "Yes, sir" and "No, sir." Likewise, Defendant continued to deny ingesting any controlled substances. Officer Hilliard and the second

16

officer proceed to question a few witnesses and then transport Defendant back to the Middletown Police Department.

Based on thorough research and contemplation regarding the probable cause standard as applied to these facts, the Court is not persuaded that probable cause existed to arrest Defendant for a DUI. The State rests its DUI probable cause analysis on: (1) the one-vehicle collision;[57] (2) Ms. Pacheco's observations and belief that Defendant was "high"; (3) and Officer Hilliard's observations of Defendant's "clenched hands, pinpoint pupils, blank stare; and mumbled, incomprehensible speech."[58] First, the Court afforded little weight to the State's argument that pinpoint pupils are indicative of drug use. The argument is reminiscent of the State's argument in *State v. Heath* where it argued that bloodshot eyes combined with an absence of an odor of drugs or alcohol indicated [] the Defendant's drug use."[59] The Delaware Superior Court did not agree; finding this focus on the normality of a non-criminal iris to be unconvincing when innocent explanations abounded.[60] Besides conclusory statements, the State has presented no reason for this Court to diverge from precedent.

Second, the Court affords little weight to Ms. Pacheco's belief that Defendant was "high." While the State does not carry the burden of a criminal trial, allowing a lay person to express an opinion regarding drug intoxication still gives the Court pause. The State has not provided the Court with supporting Delaware case law for its reliance on Ms. Pacheco's observation. The Court's research has yielded no Delaware case law directly on point. Hence, the Court expanded

---

[57] The collision in this case does not appear particularly odd in comparison to other cases. *See, e.g., Rybicki v. State,* 119 A.3d 663, 667 (Del. 2015) (describing a one-vehicle accident in which the defendant drove over a grass embankment, struck the curb, and came to rest facing west bound across northbound lanes).

[58] State's Response at 6-7.

[59] *State v. Heath,* 929 A.2d 390, 409 (Del. Super. 2006).

[60] *Compare id.* ("However, bloodshot eyes can 'result from a variety of non-criminal circumstances, such as tiredness, allergies, or just rubbing of the eyes.' " (quoting *Ferris v. State,* 355 Md. 356, 735 A.2d 491, 509 (1999))), *with Hardy v. Vein,* 2016 WL 5407851, at *6 (Del. Com. Pl. June 27, 2016) (noting that one innocent explanation of a head injury does not negate a finding of probable cause, especially when defendant's breath contained a strong odor of alcohol).

its search and found that other jurisdictions disagree on whether experts are required to opine on

drug intoxication and impairment.[61] Nevertheless, this Court is persuaded by *State v. Bealor*.[62] In

*Bealor*, the New Jersey Supreme Court declined to allow layperson testimony as to marijuana

intoxication, stating:

> In *State v. Smith*, 58 *N.J.* 202, 213, 276 *A.*2d 369 (1971), we explained that "[a]n ordinary citizen is qualified to advance an opinion in a court proceeding that a person was intoxicated because of consumption of alcohol. The symptoms of that condition have become such common knowledge that the testimony is admissible." At that time, we further held that "[n]o such general awareness exists as yet with regard to the signs and symptoms of the condition described as being 'high' on marihuana." Although much has changed in the intervening years since our decision in *State v. Smith,* the passage of time alone does not relieve a party of its burdens of proof and persuasion. In this case, the State had the burden of creating a proper record from which a fair determination could be made that the symptoms of marijuana intoxication "have become such common knowledge that [lay opinion] testimony [that a person was intoxicated because of the consumption of marijuana] is admissible."[63]

The New Jersey Supreme Court held that the State had failed to "tender any proofs at any stage of

these proceedings to show that there is now a general awareness of the indicia or symptoms of

marijuana intoxication."[64]

---

[61] *Compare Harris v. District of Columbia*, 601 A.2d 21, 24 (D.C. 1991) ("The rationale for allowing lay opinion on whether an individual appeared intoxicated by alcohol or insane also calls for allowing lay opinion on whether an individual appeared to be under the influence of drugs."), *with State v. Rifkin*, 438 A.2d 1122, 1124-25 (Vt. 1981) ("If laymen are unable to rationally relate observed symptoms to the influence of a particular drug, it follows that their opinions are also incompetent to prove that the influence of the particular drug was to such a degree that it rendered the defendant incapable of driving safely. We hold that an arresting officer or other witness may give an opinion as to whether a defendant is under the influence of drugs and to a degree rendering him incapable of driving safely only when qualified as an expert to determine these issues from the symptoms displayed." (internal citations omitted)). A third approach—slightly divergent from the first—is also available in which the jurisdiction allows lay opinion testimony as to drug intoxication, but requires a foundation to be laid that the lay person is "personally familiar" with the effects of said drug. *See Commonwealth v. Yedinak*, 676 A.2d 1217, 1221 (Pa. Super. 1996), *reh'g denied, appeal denied*, 548 Pa. 618, 693 A.2d 588 (1996) (TABLE).

[62] *State v. Bealor*, 902 A.2d 226 (N.J. 2006).

[63] *Id.* at 234 (internal citations omitted).

[64] *Id.* Ultimately, the Court found the defendant guilty of operating a motor vehicle under the influence of narcotics because the defendant's actions clearly evidenced a driver who was unable to properly operate a vehicle. *Id.* at 236 ("Even if limited solely to the time of his arrest, the fact of defendant's intoxication was amply proved by [State Police Trooper] Donahue's fact testimony in respect of defendant's erratic and dangerous driving, his slurred and slow speech, his "bloodshot and glassy" eyes, his droopy eyelids, his "pale and flushed" face, his "fumbl[ing] around the center console and his glovebox searching for all his credentials," the smell of burnt marijuana on defendant, his sagging knees and the "emotionless stare on his face." Also, on cross-examination, Donahue testified without objection that

The *Bealor* analysis is persuasive; mainly because it implies an understanding that different types of narcotics affect individuals differently.[65] Allowing lay opinions on what constitutes drug intoxication could quickly devolve into reliance on myths and inaccuracies. This implication becomes a non-issue if the litmus test is whether the layperson's belief is common knowledge and based on prior observation—akin to the current state of people's knowledge regarding alcohol consumption. Therefore, the Court declines to afford Ms. Pacheco's statement more weight in its determination.

Based on a totality of the circumstances, the complete interaction between Officer Hilliard and Defendant appears indicative of an individual who is fearful and nervous around a police officer. Phrased differently, Defendant's behavior is not so "erratic" or "irrational" as to support a finding of probable cause.[66] In *Caldwell v. State*, the Delaware Supreme Court held that "nervousness and implausible or conflicting answers" is often insufficient.[67] Indeed, Defendant's subsequent interactions with Officer Hilliard do not elicit the State's broad, sweeping categorization of "incomprehensible speech."[68] In fact, Defendant's lucidity in later questioning supports this Court's analysis. Defendant's demeanor is quiet, his voice soft spoken, and he chooses to answer only certain questions from Officer Hilliard.

---

defendant was intoxicated at the time of his arrest. Finally, the State incontrovertibly proved, through qualified experts, the presence of marijuana in defendant's blood stream at the time of the arrest and its likely source.").

[65] *Id.* at 238.

[66] *See State v. Trager*, 2006 WL 2194764, at *6 (Del. Super. July 28, 2006) (finding fighting a dog to be erratic and irrational behavior that the police officer could consider in making a probable cause determination).

[67] *Caldwell v. State*, 780 A.2d 1037, 1050 & n.32 (Del. 2001) (finding nervous behavior and an odd assertion insufficient to support reasonable suspicion).

[68] State's Response at 7.

19

Further, Defendant exhibited no other signs of intoxication; no odor was present, no slurred speech, no trouble walking,[69] and no odd behavior unique to intoxication.[70] Similarly, in cases where a defendant was noted for conversational abnormalities other facts supported finding probable cause under the totality of the circumstances.[71] This case contains no such facts. Therefore, this Court follows the Delaware Supreme Court's admonishment—"[i]n a close case like the present one, the balance ought to be struck on the side of the freedom of the citizen from governmental intrusion"—and finds that Officer Hilliard did not possess probable cause to arrest Defendant for a DUI.[72]

### E. Regarding Blood Draw Procedure

Regarding the blood draw, Defendant argues that: (1) the Affidavit lacks probable cause within its four-corners for the blood draw, and (2) the drawing of blood violated 21 *Del. C.* § 4177(a)(6) because it occurred more than four hours after Defendant was reported driving.[73] The

---

[69] *See State v. Williams*, 2012 WL 6738546, at *2 (Del. Com. Pl. Oct. 25, 2012) ("Similarly, the circumstances here provided the officer with sufficient showing of probable cause, even without field sobriety tests, given that the defendant failed to follow the orders of the police officer, was erratic in her driving actions, smelled of alcohol, slouched over her steering wheel, slurred her speech, and walked unsteadily from her car, requiring assistance.").

[70] *See State v. Ori*, 2016 WL 3568356, at *2 (Del. Super. June 22, 2016) ("In spite of all of that, though, there undisputedly exists the accident, the odor of alcohol on Defendant's breath, and Defendant's having urinated while seated in Affiant's police vehicle.").

[71] *See Glass v. State*, 543 A.2d 339, 1988 WL 61582, at *1 (Del. June 13, 1988) (TABLE) (single accident involving a pickup truck resting on its side against a telephone pole and the odor of alcohol on defendant's breath occurring on two occasions buttressed defendant's "confused and disoriented state"); *Auwerda v. State*, 2017 WL 2729561, at *9 (Del. Super. June 19, 2017) (affirming the Court of Common Pleas' finding that the "smell of alcohol; appellant's glassy, red eyes; his motor skills problems; appellant's inability to pass the field tests; and the police officer's information that appellant had been driving a short period before the officer encountered him" were sufficient for probable cause to arrest for DUI); *State v. Napier*, 2009 WL 2859164, at *1-2, 7 (Del. Com. Pl. Apr. 8, 2009) (finding probable cause to arrest defendant when: the police officer detected a strong odor of marijuana emanating from the vehicle and from defendant's person, defendant's eyes were bloodshot and half-closed, he was "very confused," his hand-eye coordination "was very slow," and he did not understand "basic questions," defendant fell out of the vehicle and admitted to marijuana being involved).

[72] *Jones v. State*, 745 A.2d 856, 868 (Del. 1999) (quoting *State v. Oquendo*, 613 A.2d 1300, 1312 (Conn. 1992)).

[73] Defendant's Motion at 2-3; Defendant's Reply at 3-4. Regarding the "four corner test," the Court notes that the Aguilar-Spinelli test is not utilized. *See Gardner v. State*, 567 A.2d 404, 409-10 (Del. 1989) (adopting *Illinois v. Gates*, 462 U.S. 213 (1983)); *Sierra v. State*, 958 A.2d 825, 829 n.18 (Del. 2008) (noting that *Illinois v. Gates* replaced the Aguilar-Spinelli test with the totality of the circumstances test). The Court directs the parties' attention to *State v. Murray* for the totality of the circumstances test. *See Murray*, 2017 WL 5668030, at *5.

20

first argument is moot as the Court has found that Officer Hilliard did not possess probable cause to arrest Defendant for a DUI. The second argument remains relevant.[74]

Section 4177(a)(6) states:

> When the person's blood contains, within 4 hours of driving, any amount of an illicit or recreational drug that is the result of the unlawful use or consumption of such illicit or recreational drug or any amount of a substance or compound that is the result of the unlawful use or consumption of an illicit or recreational drug prior to or during driving.[75]

Section 4177(g) states:

> For purposes of a conviction premised upon subsection (a) of this section, or any proceeding pursuant to this Code in which an issue is whether a person was driving a vehicle while under the influence, evidence establishing the presence and concentration of alcohol or drugs in the person's blood, breath or urine shall be relevant and admissible. Such evidence may include the results from tests of samples of the person's blood, breath or urine taken within 4 hours after the time of driving *or at some later time.*[76]

While these two subsections appear contradictory, the Delaware Superior Court—as well as this Court—have found that the four-hour window requires strict adherence when the defendant is charged under a DUI *per se* provision.[77] Despite the plain language of § 4177(g), this Court is inclined to follow the appellate court's interpretation.[78] At the suppression hearing, Officer Hilliard stated that he was dispatched to the collision scene at 7:26 p.m. on May 20th and Ms. Cruz drew Defendant's blood at 12:40 a.m. on May 21st.[79] Presuming that Officer Hilliard arrived immediately after being dispatched, Defendant's blood was still not drawn until approximately

---

[74] It is unclear why the State did not address this argument in its Response brief.

[75] 21 *Del. C.* § 4177(a)(6) (emphasis added).

[76] 21 *Del. C.* § 4177(g) (emphasis added).

[77] *See Fiori v. State*, 2004 WL 1284205, at *2 (Del. Super. May 26, 2004) (citing 21 *Del. C.* § 4177(g)) ("The test result is relevant and admissible only if the sample of breath or blood tested is taken within four hours of driving."); *State v. Foskey*, 2006 WL 1719977, at *4 (Del. Com. Pl. June 23, 2006).

[78] *State v. Hannon* is distinguishable as it addresses whether § 4177(g) controls when the defendant is charged under a *general impairment theory* of DUI. *See State v. Hannon*, 2016 WL 236995 (Del. Com. Pl. Jan. 19, 2016).

[79] State's Exhibit 1.

five hours later. Because Defendant's blood was drawn outside the four-hour window, the blood results must be excluded.[80]

## V.  CONCLUSION

For the reasons articulated above, the Court finds that the State has met its burden of proving by a preponderance of the evidence that Officer Hilliard possessed reasonable articulable suspicion to stop Defendant, reasonable articulable suspicion to proceed from an accident investigation to a DUI investigation, and probable cause to arrest Defendant for resisting arrest, in violation of 11 *Del. C.* § 1257(b). The State has failed to prove that Officer Hilliard possessed probable cause to arrest Defendant for a DUI, and has failed to meet its burden that the blood draw occurred within four-hours of Defendant driving his vehicle.

Additionally, the Court finds that the State has proven by a preponderance of the evidence that probable cause existed to charge Defendant under 21 *Del. C.* § 4201(b) and 21 *Del. C.* § 4176(b). However, the State has failed to prove by a preponderance of the evidence that probable cause existed to charge Defendant under 21 *Del. C.* § 4201(a), as the statute does not require a driver to remain at the scene when only the driver's property sustains damage.[81] The clerk shall set this case for trial at the earliest convenience of counsel.

**IT IS SO ORDERED** this 20th day of April, 2018.

_____
John K. Welch, Judge

cc:  *Ms. Diane Healey, Judicial Case Manager Supervisor*
cc:  *Ms. Michelle Jackson, Judicial Operations Manager*

---

[80] *See Foskey*, 2006 WL 1719977, at *4 (deeming the blood draw results inadmissible).
[81] 21 *Del. C.* § 4201(a) ("If the damage resulting from such collision is to the property of the driver only, with no damage to the person, property of another, or the environment, the driver need not stay at the scene of the collision but shall immediately make a report of the damage resulting as required by § 4203 of this title.").

22